# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Corona, a single man,<br><br>                    Plaintiff,<br><br>v.<br><br>Matt Hunter and Jane Doe Hunter, husband and wife; Maricopa County, a political subdivision of the State of Arizona; Black Corporations I-V, White Partnerships I-V,<br><br>                    Defendants. | **NO. CV 23-01251-PHX-JAT**<br><br>**JOINT FINAL PRETRIAL ORDER** |

The following is the **joint** Final Pretrial Order considered at the Final Pretrial Conference on December 17, 2025, at 10:00 a.m.

## A.    COUNSEL FOR THE PARTIES

Include the mailing addresses, e-mail addresses, and office phone and fax numbers.

Plaintiff:

    Law Office of Paul Gattone
    BY:    Paul Gattone
           gattonecivilrightslaw@gmail.com
           301 S. Convent Ave
           Tucson, AZ 85701

Defendant:

    MARICOPA COUNTY ATTORNEY'S OFFICE
    BY:    Kim Chamberlain (031675)
           Charles E. Trullinger (018936)
           Evelyn D. Dueñas (037586)

Kim.Chamberlain@mcao.maricopa.gov
trullinc@mcao.maricopa.gov
evelyn.duenas@mcao.maricopa.gov
225 West Madison Street
Phoenix, Arizona 85003

Telephone (602) 506-8541
Facsimile (602) 506-4316

**B.    STATEMENT OF JURISDICTION**

1.    The United States District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331, because Plaintiff's excessive use of force claim arises out of the Fourth Amendment of the Constitution of the United States. The Court has supplemental jurisdiction over Plaintiff's pendent state law claims via 28 U.S.C. § 1367.

2.    Jurisdiction is not disputed.

**C.    STIPULATIONS AND UNCONTESTED FACTS AND LAW**

1.    The following **facts are admitted** by the parties and require no proof:

    a.    On June 18, 2022, at around 2:20 p.m., a large fight broke out at the Lower Salt River Tubing, Bus Stop # 4, in the Tonto National Forest. The altercation arose after a group of approximately 20 people attempted to cut in line.

    b.    MCSO Officers intervened and began to physically separate and disperse those fighting.

    c.    Plaintiff was treated on scene by MCSO Posse Medic Grant Venable.

2.    The following disputed facts are **submitted by Plaintiff**:

    a.

3.    The following disputed facts are **submitted by Defendant**:

    a.    Plaintiff Fernando Corona voluntarily entered the fray and continued to involve himself in the fight even after law enforcement had arrived and there was no need for him to do so.

2

b.      Plaintiff Fernando Corona was actively interfering in the fight as law enforcement were trying to separate the individuals fighting.

c.      Plaintiff did not tell Posse member Venable that he was hit with a baton.

d.      Plaintiff refused transport by ambulance.

e.      Plaintiff had THC, Adderall, amphetamine/methamphetamine, and alcohol, in his system.

f.      Plaintiff told hospital staff that:

(1)    Police grabbed him and threw him from the scene with him landing hard on his left lower extremity. He immediately noted pain and inability to ambulate.

(2)    Police threw him away. He landed hard on left leg. He felt immediate pain and was unable to ambulate.

(3)    He was tackled by police and injured his left knee. Unable to bear weight.

g.      On July 21, 2022, Plaintiff called MCSO and spoke with Linda Walters (A5729), telling her that a deputy threw him to the ground and fractured his knee.

h.      On July 27, 2022, Plaintiff spoke with PSB investigator, Bryan Flanigan, and told him that police picked him up, hip tossed him to the ground, that he landed on his knee, and that he instantly knew something was wrong.

i.      On November 15, 2022, Plaintiff served a Notice of Claim, saying that a deputy grabbed him from behind and threw him forcibly to the ground.

j.      On February 6, 2023, Plaintiff's counsel received the Investigative Report ("IR") related to the incident (IR22015850). As a supplement to that report, Reserve Deputy Pablo Gonzalez claimed that Lt. Matt

3

Hunter struck a Hispanic male in the left leg.

k.    On March 13, 2023, Plaintiff served an amended Notice of Claim, saying that "Lt. Matt Hunter approached him without warning or cause and struck him in the leg with a collapsible baton."

l.    In April of 2023, Reserve Deputy Pablo Gonzalez resigned.

m.    On September 13, 2023, PSB investigator Bryan Flanigan spoke with plaintiff's then counsel, Colby Kanouse, to ask why the Notice of Claim was amended. Sgt. Flanigan was told it was due to reviewing the IR report and seeing the supplemental report by Reserve Deputy Gonzalez.

n.    It was only because of Plaintiff's counsel's receipt of the supplemental report that Plaintiff changed his original story and began alleging that he was hit with a baton.

o.    On or about January 11, 2024, Reserve Deputy Pablo Gonzalez was found to have prepared an inaccurate incident report regarding the allegation that Lt. Hunter struck Plaintiff with an expandable baton, in violation of MCSO policy GF-5.

p.    On or about January 11, 2024, it was determined that the allegation Lt. Matt Hunter struck Plaintiff in the knee with an expandable baton was determined to be "unfounded."

q.    On April 17, 2024, MCSO PSB sent Reserve Deputy Pablo Gonzalez a letter of their findings against him.

r.    Reserve Deputy Gonzalez was not disciplined for filing an inaccurate report because he resigned prior to the completion of the PSB investigation.

s.    On January 18, 2023, plaintiff had his last visit with knee surgeon,

4

Gary Purcell.  Dr. Purcell found that Plaintiff had essentially full range of motion and that the fracture was healed, with only some remaining mild tenderness primarily over the area of the incision. Plaintiff was told to return to the office as needed. Plaintiff never returned to the office for additional care.

t.  Lt. Hunter did not strike Plaintiff with a baton, nor did Lt. Hunter throw, push, or cause Plaintiff to fall to the ground. Plaintiff injured his knee when he fell on it, either as a result of a different officer lawfully separating individual involved in the fight, or from tripping.

4.  The following **facts**, **although not admitted, will not be contested** at trial by evidence to the contrary:

a.

5.  The following **issues of law** are uncontested and stipulated to by the parties:

a.  Lieutenant Hunter was acting under the color of state law.

**D.    CONTESTED ISSUES OF FACT AND LAW**

1.  The following are the **issues of fact** to be tried and decided:

Issue # 1: How Plaintiff's left knee injury was sustained.

Plaintiff contends: Lt. Hunter hit Plaintiff with a collapsable baton, thus injuring his left knee. Further, Defendant Hunter intentionally caused a harmful or offensive contact with Plaintiff by striking him in the knee with his baton.

Defendant contends: Lt. Hunter did not hit Plaintiff with a baton. Instead, Plaintiff injured his knee when he fell on it, either as a result of a different officer lawfully separating individuals involved in the fight, as Plaintiff initially alleged, or from tripping. Only after Plaintiff obtained the IR report did he change his story to allege he was hit in the knee with a baton.

2.  The following are the **issues of law** to be tried and determined:

**Issue # 1 (Battery; liability)**: Whether Lt. Hunter intentionally caused a harmful or offensive contact with Plaintiff.

Plaintiff Contends: Plaintiff injured his knee when he fell on it, either as a result of a different officer lawfully separating individuals involved in the fight, as Plaintiff initially alleged, or from tripping. Only after Plaintiff obtained the IR report did he change his story to allege he was hit in the knee with a baton.

Defendant Contends: Lt. Hunter did not intentionally cause a harmful or offensive contact with Plaintiff. Lt. Hunter did not strike Plaintiff with his baton or throw him or hip toss him.

**Issue # 2 (Battery; causation)**: Whether Plaintiff's alleged injuries were caused by a harmful or offensive contact by Lt. Hunter?

Plaintiff Contends: Yes. Plaintiff's injuries were caused by a harmful or offensive contact by Defendant Hunter when he struck Plaintiff in the knee with a collapsable baton.

Defendant Contends: No. Plaintiff's injuries were caused when he fell on it, either as a result of a different officer lawfully separating individuals involved in the fight, as Plaintiff initially alleged, or from tripping.

**Issue # 3 (Battery; damages):** What is the extent of Plaintiff's damages caused by Lt. Hunter as a result of the June 18, 2022, incident?

Plaintiff Contends: As a direct cause of Defendant Hunter's harmful and excessive use of force, Plaintiff has sustained extensive and permanent injuries to his left knee. Plaintiff's quality of life has diminished greatly due to multiple surgeries, chronic pain, the necessity for continued physical therapy, as well as exacerbating co-morbid issues such as his previously diagnosed Type 1 Diabetes and sleep problems. As such, Plaintiff is entitled an award to damages.

Defendant Contends: None because if it is found that Lt. Hunter did not cause Plaintiff's injuries, then Plaintiff is not entitled to damages. However, if Lt. Hunter is

found to have caused Plaintiff's injury, his damages are limited to what Plaintiff timely disclosed during discovery and produced at the meeting held to exchange exhibits on October 17, 2025. Plaintiff has not disclosed any evidence of medical care after seeing Dr. Purcell on January 18, 2023. Nor has Plaintiff disclosed any evidence of the need for future medical care, lost wages beyond what has been disclosed, or future economic damages. Plaintiff has not provided a calculation of damages. In addition, Plaintiff cannot be awarded damages for non-left-knee-related alleged injuries, such as damages related to gym memberships, mental health, sleep apnea, tonsillectomy and uvulectomy, pre-existing conditions such as diabetes, numbness and tingling in his hands from pinched nerves, back pain, high blood pressure, or high cholesterol.

As for left-knee-related damages, Plaintiff is precluded from being awarded damages for any left-knee injuries that were not disclosed and/or resulted from an injury unrelated to the injury received on June 18, 2022. He is further precluded from being awarded damages for any future knee replacement.

**Issue # 4 (Battery; affirmative defense):** If a jury believes that Lt. Hunter intentionally caused a harmful or offensive contact with Plaintiff, was it reasonable for him to do so to maintain order? Source: A.R.S. § 13-403(3) and 13-413.

<u>Plaintiff Contends</u>: It was not a reasonable use of force for Defendant Hunter to maliciously strike Plaintiff's knee with a retractable baton. In addition to injuring Plaintiff, Defendant Hunter was found culpable for injuring another individual (Jayne Ramirez), resulting in similar injury. Defendant Hunter's actions were not justified by the circumstances present at the time.

<u>Defendant Contends</u>: Lt. Hunter did not cause a harmful or offensive contact with Plaintiff. However, if the jury finds otherwise then Lt. Hunter's actions were justified by his right to maintain order at the Lower Salt River Tubing, Bus Stop #4.

**Issue # 5 (Negligence; liability)**: Whether Lt. Hunter was at fault for Plaintiff's

7

injuries?

Plaintiff Contends: Yes, Defendant Hunter is solely at fault for his injuries and damages.

Defendant Contends: No. Lt. Hunter was not at fault. Lt. Hunter did not hit Plaintiff with a baton. Instead, Plaintiff injured his knee when he fell on it, either as a result of a different officer lawfully separating individuals involved in the fight, as Plaintiff initially alleged, or from tripping. Lt. Hunter acted with reasonable care.

**Issue # 6 (Negligence; comparative fault)** Whether Plaintiff was at fault for his own injuries.

Plaintiff Contends: No. Plaintiff was in no way responsible for his own injuries. Additionally, no one else in the disturbance was responsible for his injury.

Defendant Contends: Yes. Plaintiff was comparatively at fault for his own injuries by participating in the fight.

**Issue # 7 (Negligence; causation)**: Whether Lt. Hunter's fault caused Plaintiff's injuries.

Plaintiff Contends:  Defendant Hunter did cause Plaintiff's injury to his left knee through his negligent and reckless actions.

Defendant Contends: Lt. Hunter did not cause any of Plaintiff's injuries. Lt. Hunter did not breach any duty towards Plaintiff as he did not hit Plaintiff with his baton.  Instead, Plaintiff injured his knee when he fell on it, either as a result of a different officer lawfully separating individuals involved in the fight, as Plaintiff initially alleged, or from tripping.

**Issue # 8 (Negligence; damages)**: What is the extent of Plaintiff's damages caused by Lt. Hunter as a result of the June 18, 2022, incident?

Plaintiff Contends: The extent of damages caused by Defendant Hunter is extensive due to him intentionally injuring Plaintiff's left knee. In addition to the injury in it of itself, the left knee injury cascaded into a litany of other issues that Plaintiff was managing prior

to the incident. This includes the treatment of his Type 1 Diabetes, sleep apnea, and general lifestyle in order to not fall into ill health due to his co-morbid issues. Plaintiff needed multiple surgeries on his left knee in order to resolve the injury to the best of any medical professional's ability. Further, due to Plaintiff's sedentary lifestyle because of his injury, this worsened the symptoms of his Type 1 Diabetes and sleep apnea due to his lack of exercise. Further, this includes physical therapy sessions and treatments to alleviate pain and further increase mobility, use, and range of motion of his injured knee.

Defendant Contends: None because if it is found that Lt. Hunter did not cause Plaintiff's injuries, then Plaintiff is not entitled to damages. However, if Lt. Hunter is found to have caused Plaintiff's injury, his damages are limited to what Plaintiff timely disclosed during discovery and produced at the meeting held to exchange exhibits on October 17, 2025. Plaintiff has not disclosed any evidence of medical care after seeing Dr. Purcell on January 18, 2023. Nor has Plaintiff disclosed any evidence of the need for future medical care, lost wages beyond what has been disclosed, or future economic damages. Plaintiff has not provided a calculation of damages. In addition, Plaintiff cannot be awarded damages for non-left-knee-related alleged injuries, such as damages related to gym memberships, mental health, sleep apnea, tonsillectomy and uvulectomy, pre-existing conditions such as diabetes, numbness and tingling in his hands from pinched nerves, back pain, high blood pressure, or high cholesterol.

As for left-knee-related damages, Plaintiff is precluded from being awarded damages for any left-knee injuries that were not disclosed and/or resulted from an injury unrelated to the injury received on June 18, 2022. He is further precluded from being awarded damages for any future knee replacement.

**Issue # 9 (Negligence; affirmative defense)** Whether Plaintiff assumed the risk of injury by participating in the fight.

Plaintiff Contends: No. Plaintiff did not willingly participate in the fight. Thus, he

9

would not have been intentionally injured by Defendant Hunter had he not been caught up in the whirlwind of the disturbance.

Defendant Contends: Yes. Plaintiff assumed the risk of injury when he participated in the fight.

**Issue # 10 (Battery & negligence; Arizona qualified immunity):** If the jury determines Lt. Hunter hit Plaintiff with a baton, did Lt. Hunter either "know or should have known he was acting in violation of established law *or* that he acted in reckless disregard of whether his activities would deprive Plaintiff of his rights." Source: *Chamberlain v. Mathis*, 151 Fed. 551, 558 (1986).

Plaintiff Contends: Yes. If a jury determines Defendant Hunter hit plaintiff in the left knee with his baton, it was done recklessly and intentionally with knowledge that it could cause injury to Plaintiff. In addition to injuring Plaintiff, Defendant Hunter was found culpable of intentionally hitting and injuring another individual caught in the disturbance.

Defendant Contends: No. If a jury determines Lt. Hunter hit plaintiff in the left knee with his baton, it was not done recklessly but was unintentional. Further, Defendant is not aware of any case law that would have put Lt. Hunter on notice that accidentally hitting a participant in a group fight with a baton while trying to break up a fight was a violation of the participant's rights under state law. Defendant is also not aware of any case law that categorically precludes a law enforcement officer from using a baton while trying to restore peace during a large fight. See A.R.S. § 13-403(3), which permits such action.

**Issue # 11 (Excessive Force; liability):** Whether Lt. Hunter was making a lawful arrest or defending himself or others or attempting to stop a fleeing or escaping suspect as it relates to Plaintiff.

Plaintiff Contends: Yes. Defendant Hunter's unlawful seizure of Plaintiff

1   constituted an arrest in which Plaintiff was seriously injured.

2       Defendant Contends: No, Lt. Hunter was not making a lawful arrest or defending

3   himself or others or attempting to stop a fleeing or escaping suspect as it relates to Plaintiff.

4       **Issue # 12 (Excessive Force; causation)**: Whether Plaintiff's alleged injuries were

5   caused by Lt. Hunter hitting him with baton as a result of using excessive force on June

6   18, 2022?

7       Plaintiff Contends: Defendant Hunter did cause Plaintiff's injuries through the

8   application of excessive force on Plaintiff.

9       Defendant Contends: Lt. Hunter did not cause any of Plaintiff's injuries. Lt. Hunter

10  did not breach any duty towards Plaintiff as he did not hit Plaintiff with his baton.  Instead,

11  Plaintiff injured his knee when he fell on it, either as a result of a different officer lawfully

12  separating individuals involved in the fight, or as Plaintiff initially alleged, or from

13  tripping.

14      **Issue #13 (Excessive Force; damages)**: What are the extent of Plaintiff's damages

15  as a result of using excessive force on June 18, 2022?

16      Plaintiff Contends: The extent of damages caused by Defendant Hunter is extensive

17  due to him intentionally injuring Plaintiff's left knee. In addition to the injury in it of itself,

18  the left knee injury cascaded into a litany of other issues that Plaintiff was managing prior

19  to the incident. This includes the treatment of his Type 1 Diabetes, sleep apnea, and

20  general lifestyle in order to not fall into ill health due to his co-morbid issues. Plaintiff

21  needed multiple surgeries on his left knee in order to resolve the injury to the best of any

22  medical professional's ability. Further, due to Plaintiff's sedentary lifestyle because of his

23  injury, this worsened the symptoms of his Type 1 Diabetes and sleep apnea due to his lack

24  of exercise. Further, this includes physical therapy sessions and treatments to alleviate

25  pain and further increase mobility, use, and range of motion of his injured knee.

26      Defendant Contends: None because if it is found that Lt. Hunter did not cause

Plaintiff's injuries, then Plaintiff is not entitled to damages. However, if Lt. Hunter is found to have caused Plaintiff's injury, his damages are limited to what Plaintiff timely disclosed during discovery and produced at the meeting held to exchange exhibits on October 17, 2025. Plaintiff has not disclosed any evidence of medical care after seeing Dr. Purcell on January 18, 2023. Nor has Plaintiff disclosed any evidence of the need for future medical care, lost wages beyond what has been disclosed, or future economic damages. Plaintiff has not provided a calculation of damages. In addition, Plaintiff cannot be awarded damages for non-left-knee-related alleged injuries, such as damages related to gym memberships, mental health, sleep apnea, tonsillectomy and uvulectomy, pre-existing conditions such as diabetes, numbness and tingling in his hands from pinched nerves, back pain, high blood pressure, or high cholesterol.

As for left-knee-related damages, Plaintiff is precluded from being awarded damages for any left-knee injuries that were not disclosed and/or resulted from an injury unrelated to the injury received on June 18, 2022. He is further precluded from being awarded damages for any future knee replacement.

**Issue # 14 (Excessive Force; federal qualified immunity)**: If the jury determines Lt. Hunter accidentally hit Plaintiff with a baton, has it been clearly established that accidentally hitting a person with a baton while breaking up a group fight violates the accidentally hit person's constitutional rights. *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010).

Plaintiff Contends: Yes. This was not an accidental application of force, but rather an intentional application of excessive under color of state law.

Defendant Contends: No. Defendant is not aware of any case law that would have put Lt. Hunter on notice that accidentally hitting a participant in a group fight with a baton was a violation of the participant's constitutional rights.

1    **E.    LIST OF WITNESSES**

2    Each party shall **<u>separately</u>** list the names of witnesses, their respective addresses,

3    whether a fact or expert witness, and a brief statement as to the testimony of each witness.

4    The witnesses shall be grouped as follows:

5    (1)    Witnesses who <u>shall</u> be called at trial:

6    a.  Plaintiff: (all of Plaintiff's witnesses are fact witnesses)

7

8    i.  Mr. Fernando Corona
        c/o Law Office of Paul Gattone
9       301 S Convent Ave
        Tucson, AZ
10

11   Fernando Corona was a civilian who was recreating at the Salt River
     at the time of the incident where he was injured. Mr. Corona will
12   testify about what precipitated the disturbance on the day of the
     incident, leading to his injury of his left knee.
13

14   He is expected to testify that he was caught up in the disturbance that
     started between two women near him and his group of friends at Bus
15   Station #4, which erupted into a fight involving dozens of individuals
     of all ages and genders.
16

17   He is also expected to testify about the moments leading up to the
     disturbance, his proximity to the disturbance, the manner in which he
18   was caught up in the disturbance, and the sequence of events that took
     place during the incident which resulted in Defendant Hunter
19   intentionally and recklessly injuring his knee.
20

21   ii.  Chaplain John Sahlberg
         Maricopa County Sheriff's Office
22       550 W Jackson
         Phoenix, AZ 85003
23

24   Chaplain Sahlberg was a volunteer chaplain with MCSO on the day
     of the incident. Chaplain Sahlberg is expected to testify consistent
25   with a prior interview he gave to the MCSO internal affairs
     department investigators regarding his observations and his
26   involvement in the disturbance that took place at Bus Station 4 along

the Salt River. Specifically, he is expected to testify that he was the only law enforcement-associated personnel present at Bus Stop 4 in the moments when a disturbance broke out among civilians waiting for the buses. He is expected to testify that he was forced to the ground early on during the disturbance, and that he observed other uniformed MCSO personnel arrive to the scene moments after he was forced to the ground. He is expected to testify that he observed a white male MCSO officer swinging a baton in the immediate vicinity where Plaintiff Corona was located in that moment. He is expected to testify that he observed this particular officer strike someone he believed to be a tan or Hispanic male, with a baton.

   iii.   Deputy Matt Hunter
        Maricopa County Sheriff's Office
        550 W Jackson
        Phoenix, AZ 85003

Deputy Hunter is the law enforcement officer employed by MCSO whom Plaintiff contends struck Plaintiff Corona with his department-issued baton. Deputy Hunter is expected to testify consistent with prior interviews he conducted with MCSO's internal affairs department following the June 2022 incident. Specifically, Defendant Hunter is expected to testify that he recalls striking with his baton a young woman who matches the description of Jayne Ramirez and that he does not independently recall seeing a civilian who matches the description of Plaintiff Corona. He is expected to testify that he is familiar with his former co-worker, Pablo Gonzalez, is aware that Mr. Gonzalez claimed to have seen him strike Plaintiff Corona in the leg during the approximate timeframe in which Hunter struck Jayne Ramirez. He is expected to testify that he did not knowingly strike anyone matching Plaintiff Corona's description but that he previously told investigators he acknowledged the possibility of inadvertently striking other civilians while attempting to quell the disturbance and while intentionally striking Jayne Ramirez.

   iv.   Deputy Pablo Gonzalez
        Maricopa County Sheriff's Office
        550 W Jackson
        Phoenix, AZ 85003

Reserve Deputy Pablo Gonzalez was a volunteer reserve deputy assigned to monitor the crowds of people recreating at the Salt River. On the day of the incident, he was called to assist in breaking up a

14

1    disturbance at Bus Station #4 by the Salt River.

2    He is expected to testify about what he witnessed on the day of the
3    disturbance in question, which aligns with what he gave in his post-
     incident interviews. Specifically, he is expected to testify that he was
4    familiar with Defendant Hunter prior to the day of the incident, and
     that he clearly observed Defendant Hunter utilizing his department-
5    issued baton to quell the disturbance. Gonzalez is expected to testify
6    that he observed Defendant Hunter's baton make contact with a
     civilian with a physical description matching Plaintiff Corona's
7    physical description (ie, a short, dark-skinned Hispanic male).

8

9       v.    Deputy Posseman William Jinks
             Maricopa County Sheriff's Office
10            550 W Jackson
             Phoenix, AZ 85003
11

12    Posseman William Jinks was employed as a volunteer Posseman at
     with the Maricopa County Sheriff's Office at the time of the incident.
13    He is expected to testify about the moments leading up to the
14    disturbance, his proximity to the disturbance, the manner in which
     Plaintiff was caught up in the disturbance, and the sequence of events
15    that took place during the incident which resulted in Defendant
16    Hunter recklessly injuring Plaintiff's knee.

17    He is further expected to testify about Chaplain John Sahlberg falling
     to the ground at the beginning of the disturbance, observing a baton
18    being employed in the disturbance by Defendant Hunter, himself
19    deploying a baton at the order of Defendant Hunter, himself not
     making contact with anyone using his baton, and observing Plaintiff
20    on the ground after hearing someone being hit by a baton.

21      vi.    Alexandria Kasulka
22            1261 W Stratford Dr
             Chandler, AZ 85224
23

24    Alexandria Kasulka was a civilian who was recreating at the Salt
     River at the time of the incident where Plaintiff was injured. Ms.
25    Kasulka will testify about what precipitated the disturbance on the
     day of the incident, leading to the injury of Plaintiff's left knee.
26    Kasulka's testimony will be consistent with that of her deposition.

She is expected to testify about the moments leading up to the disturbance, her proximity to the disturbance, the manner in which Plaintiff was caught up in the disturbance, and the sequence of events that took place during the incident which resulted in Defendant Hunter recklessly injuring Plaintiff's knee. She is expected to testify that she observed a white male law enforcement officer, matching the description of Defendant Hunter, swinging his baton back and forth in close proximity to where Plaintiff Corona in the precise moment of Corona sustaining an injury. She is further expected to testify that the above-described baton made contact with Corona.

      vii.  Jayne Ramirez
             10826 N. 28th Ave.
             Phoenix, AZ 85029

Jayne Ramirez is a civilian who was recreating at the Salt River on the day of the incident where Plaintiff was injured. Ms. Ramirez is expected to testify that she observed a uniformed law enforcement officer strike her in the thigh in the same moment during which Plaintiff Corona was positioned nearby. She is expected to testify that this officer matches the physical description of Defendant Hunter and that this officer was swinging his baton in a manner that raises the possibility that his baton made physical contact with other civilians in the immediate area in that precise moment.

  b.  Defendant:

      i.  Lt. Matthew Hunter
          c/o Maricopa County Sheriff's Office
          550 W Jackson Street
          Phoenix, AZ

Lieutenant Matthew Hunter was the on-duty Deputy Commander for the Lake Patrol Division and District One Patrol at the time of this incident. Lt. Hunter is expected to testify about his work experience, training, skills, and background. Lt. Hunter will testify about his response to the large fight that occurred, in which Plaintiff received injuries.

He is expected to testify that he was trying to break up a fight between two females, one wearing a black bathing suit and the other one wearing an orange bathing suit. He is expected to testify that he used his presence, size, and use of hands to break up the fight between the

two females, but the measures were ineffective. He is also expected to testify that he directed 2-3 impact strikes to the lower right thigh of the female in the orange bathing suit. He is expected to testify that the strikes were ineffective. He is expected to testify that he called dispatch and ordered them to "get everyone over here." He is further expected to testify that he heard sirens and the situation began to stabilize.

He is expected to testify that Posseman Jinks pointed out one of the primary instigators who was wearing a blue bandana, later identified as Ruben Ramos, who had sucker punched another male, and started the melee. He will testify that he attempted to detain Ramos, during which time a female actively intervened in the situation. He is expected to testify that he displayed his baton to Ramos and the female but did not use it. The female backed off, and Ramos eventually complied with Hunter's commands and was detained. He is expected to testify that at the time there was no medical attention requested by any party nor was there any apparent need.

He is also expected to testify that prior to June 18, 2022, he became concerned about the security operations at the Salt River Tubing and Recreation area and making sure that MCSO officers working off duty there be held to the same standards and expectations as on-duty personnel, including wearing full MCSO uniforms.

He is also expected to testify that he did not hit Plaintiff or anyone else with his baton other than the female wearing an orange bathing suit. Nor did he cause any harmful or offensive contact with Plaintiff. He is also expected to testify consistent with his use of force report, his supplemental IR report, and his PSB interviews dated September 8, 2022, and November 20, 2023.

ii.  Posseman Grant Venable
550  W. Jackson Street
Phoenix, AZ

Mr. Venable is an MCSO Posse Medic volunteer. He is expected to testify about his training and experience as an EMT in general and his experience as an EMT volunteer for MCSO.  He is expected to testify that he regularly volunteers to perform EMT duties on weekends at or near the Salt River Tubing and Recreation Center (SRTR) for MCSO. He wears an orange long sleeve shirt identifying himself as a medic.

17

He is expected to testify that on June 18, 2022, he responded to calls for service at bus stop number 4. While there, he spoke with and provided EMT medical services to Plaintiff concerning an injury to Plaintiff's left knee. He is expected to testify that Plaintiff did not tell him that his injury was the result of being hit with a baton. A report of that type would be memorable, because he has never treated anyone who said that. For example, one time a person complained they were kicked in the head by a horse, and he has never forgotten that. He will also testify that Plaintiff refused the offer to call an ambulance for him and signed a refusal form.

Mr. Venable was interviewed by PSB on November 9, 2022, and will testify consistent with that interview and his Patient Care Report (PCR).

   iii.  Sergeant Bryan Flanigan
       c/o Maricopa County Sheriff's Office
       550 Jackson Street
       Phoenix, AZ

Sergeant Flanigan will testify about his training and experience with MCSO in general, and as a member of PSB specifically. Sgt. Flanigan will testify that he was tasked with conducting the PSB investigation after the June 18, 2022, incident and authored the PSB report.

He is expected to testify about his investigation on behalf of PSB, including his review of all the body-worn camera footage and his discussions with witnesses, officers, investigative leads, and principals. He will also testify regarding his discussions with Plaintiff and Plaintiff's initial attorney, Colby Kanouse, including Plaintiff's initial description of how his knee was injured and how that description was later changed to claim that Lt. Hunter hit him with a baton only after Plaintiff received a copy of the IR report, which included Reserve Deputy Gonzalez's inaccurate report.

He will testify regarding his findings and recommended discipline of certain officers as a result of the investigation, including the finding that Reserve Deputy Gonzalez prepared an inaccurate incident report regarding the allegation that Lt. Hunter struck Plaintiff with an expandable baton, in violation of MCSO policy GF-5. He also found that the allegation against Lt. Hunter regarding hitting Plaintiff with

18

his baton was unfounded.

He is expected to testify regarding how his recommendations are reviewed by higher authorities and the court-appointed monitor until a final determination of discipline is made. He will testify that the officers who are to receive discipline, and are no longer employed by MCSO, are mailed copies for their records.

He is expected to testify that the claim against Lt. Hunter regarding use of excessive force in violation of MCSO Policy CP-1 (Use of Force), specifically the claim that Lt. Hunter struck Plaintiff in the knee with his baton, was determined to be "unfounded," indicating that the Investigation determined by clear and convincing evidence, that the allegation was false or not supported by fact.

iv.  Linda Walters
     c/o Maricopa County Sheriff's Office
     550 W. Jackson Street
     Phoenix, AZ

Ms. Walters is a Detention Officer with MCSO. She is expected to testify regarding the call she received from Plaintiff on July 21, 2022, when he first called to complain about being injured by an officer on June 18, 2022. She will lay the foundation for the phone call, which was recorded. Specifically, Plaintiff told her that he was injured as a result of being thrown to the ground by a deputy and at no time did he mention being hit with a baton.

v.  Deputy Brian Bowling
    c/o Maricopa County Sheriff's Office
    550 W. Jackson Street
    Phoenix, AZ

Officer Bowling is a deputy with MCSO and is also a trained and certified paramedic. Officer Bowling is expected to testify that he responded to a call for service on June 18, 2022, but arrived after the fighting had ended.

Deputy Bowling is expected to testify about his activities while on scene, including his interaction with Plaintiff, which can be seen on his body-worn camera. Specifically, Officer Bowling spoke with Plaintiff and assisted Plaintiff onto the shuttle bus going back to the parking lot after Plaintiff refused ambulance service. Plaintiff told Officer Bowling that his injury was caused by an officer pushing him.

Plaintiff never said he was hit with a baton.

He is also expected to testify to his knowledge and experience regarding the operations at the Salt River Tubing and Recreation area.

   vi.  Posseman Officer William Jinks
       550 W. Jackson Street
       Phoenix, AZ

Posseman Jinks is expected to testify about his training and experience as a volunteer posse member with MCSO and about his experience volunteering at the Salt River Tubing and Recreation Center (SRTR). He is expected to testify about a fight that broke out on June 18, 2022, including seeing MCSO volunteer Chaplain Sahlberg getting knocked to the ground. Posseman Jinks was one of the first officers to respond and attempt to break up the fight. He was the first one who relayed to dispatch that a fight was occurring at bus stop number 4. He requested additional units.

He is expected to testify that he heard Lt. Hunter take out and extend his baton, which prompted Jinks to pull out his own baton. He will testify that he did not see Lt. Hunter strike anyone with his baton.

He is also expected to testify consistent with his PSB interview, including Lt. Hunter's concerns about off-duty deputies working at Salt River. He will also testify consistent with his IR report, which was incorporated into Deputy Gilchrist's report.

   vii.  Deputy Clark C. Bradshaw
       550 W. Jackson Street
       Phoenix, AZ

Officer Bradshaw is a deputy with MCSO and was on horseback when the call for assistance at the tubing area came in. He and two other horse-mounted deputies rode to the scene of the incident together on June 18, 2022. When he arrived he did not observe any active fighting, though there was still some exchange of words. He and the other horse-mounted officers tried to quell the remaining verbal disputes by putting the horses between the participants and verbally deescalating the remaining tensions.

Deputy Bradshaw is expected to testify about his observations at the scene, including his observations of and interaction with Juaquin Olivas, who ran away from Deputy Bradshaw into the desert when he was told he was not free to leave. He is expected to testify that he did not see Lt. Hunter strike anyone with his baton, though after the incident Lt. Hunter said he struck a young woman with a baton.

He is also expected to testify to his knowledge and experience regarding the operations at the Salt River Tubing and Recreation area.

viii. Any records custodian necessary to lay the foundation for any of Defendant's exhibits.

(2) witnesses who <u>may</u> be called at trial;

   a. Plaintiff

     i. Dr. Gary Purcell
       Valley Bone and Joint
       3941 E Baseline Rd, Suite 102
       Gilbert, AZ 85234

Dr. Gary Purcell was a surgeon at Valley Bone and Joint and was associated with Mercy Gilbert Medical Center in Gilbert, AZ during the care of Plaintiff Corona during his admission between June 18, 2022 and June 22, 2022. Dr. Purcell administered surgery on his left knee to repair it after it was intentionally and recklessly broken by Defendant Hunter on June 18, 2022 at Bus Station #4 at the Salt River.

He is expected to testify about the treatment and surgery of Mr. Corona in his care at Mercy Gilbert Medical Center in June 2022.

    ii. Dr. Matthew Hansen
       OrthoArizona
       1675 E Melrose St
       Gilbert, AZ 85297

Dr. Matthew Hansen was a surgeon associated with OrthoArizona in Gilbert, AZ during the care of Plaintiff Corona on August 10, 2023 and on January 25, 2024. Dr. Hansen administered two separate surgical procedures on Plaintiff's left knee to continue treatment after it was injured on June 18, 2022 at Bus Station #4 at the Salt River.

He is expected to testify about the treatment and surgeries of Mr. Corona in his care at OrthoArizona Surgical Center in August 2023 and January 2024 precipitated by the excessive use of force employed by Defendant Hunter leading to Plaintiff Corona's injury.

He is further expected to testify about the likelihood of Plaintiff Corona requiring a full knee replacement to his left knee later on in his life as a direct result of his injury.

iii. Dr. Allison Fritz
360 Physical Therapy
1076 W Chandler Blvd, Suite 103
Chandler, AZ 85224

Dr. Allsion Fritz is a physical therapist at 360 Physical Therapy in Chandler, AZ. She has been administering and overseeing physical therapy on Fernando Corona's left knee since September 2022 and has been involved in his ongoing care and rehabilitation.

She is expected to testify about the treatment and ongoing care of Mr. Corona since September 2022. She is further expected to testify that Plaintiff Corona has attended over seventy (70) sessions of physical therapy under her care and the necessity of such care. Furthermore, she will testify about Plaintiff's damages, medical expenses, evaluations, and future medical care and expenses, if any.

iv. Erika "Nikki" Simmons
Anderson's Nutrition
1206 E Warner Rd, Suite 101-G
Gilbert, AZ 85296

Erika "Nikki" Simmons is a nutritionist counselor, and she will testify regarding Plaintiff's weight gain due to his injured from the incident.

v. Reserve Deputy Tary Geesey
Maricopa County Sheriff's Office
550 W Jackson
Phoenix, AZ 85003

Reserve Deputy Tary Geesey was employed as a Sheriff's deputy

with the Maricopa County Sheriff's Office at the time of the incident. Geesey arrived a few minutes after Plaintiff Corona was injured and a few minutes after the disturbance had concluded.

Geesey will testify that she observed Defendant hunter sitting in his patrol vehicle after the disturbance had concluded and that she observed his body language and overall demeanor as being worried and remorseful.

vi.  David Gosnel
657 W Naranja Ave
Mesa, AZ 85201

David Gosnel was a civilian who was recreating at the Salt River at the time of the incident where Plaintiff was injured. Mr. Gosnel will testify about what precipitated the disturbance on the day of the incident, leading to the injury of Plaintiff's left knee. He will also testify to their personal observations of law enforcement presence on the scene and law enforcement employment of batons.

vii.  Joseph Rush
2425 E Camelia Dr
Gilbert, AZ 85296

Joseph Rush was a civilian who was recreating at the Salt River at the time of the incident where Plaintiff was injured. Mr. Rush will testify about what precipitated the disturbance on the day of the incident, leading to the injury of Plaintiff's left knee. He will also testify to their personal observations of law enforcement presence on the scene and law enforcement employment of batons.

viii.  Haley Libers
2425 E Camelia Dr
Gilbert, AZ 85296

Haley Libers was a civilian who was recreating at the Salt River at the time of the incident where Plaintiff was injured. Ms. Libers will testify about what precipitated the disturbance on the day of the incident, leading to the injury of Plaintiff's left knee. She will also testify to their personal observations of law enforcement presence on the scene and law enforcement employment of batons.

b.  Defendant

23

i.  Jayne Ramirez
10826 N. 28th Ave.
Phoenix, AZ 85029

She can be expected to testify what caused the fight on June 18, 2022, at bus stop #4, specifically that a group of 20 + people were cutting the line. Another lady made a comment

that they were shortcutting. A Mexican lady (a/k/a "Eliska") started yelling obscenities at Jayne and her friends. One of the people shortcutting the line swung at her ex-boyfriend's face and he got a bloody nose. Eliska charged at Jayne, choked her, and pulled her hair. Jayne fell in the inner tubes and got back up. Eliska continued to go after Jayne until Jayne finally defended herself by pushing and swinging back at Eliska. Jayne then felt a sharp pain on her thigh and saw that a police baton had hit her thigh. She did not see anyone else besides herself get struck with a baton. She did not request any medical services.

She is expected to testify that she is not upset with the officer who hit her with the baton because she felt he was just doing his job and both women were fighting at the time.

(3)  witnesses who are <u>unlikely</u> to be called at trial.

Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses above and that party cannot rely on that witness having been listed or subpoenaed by another party.

**F.    LIST OF EXHIBITS**

**1.**    The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a.  <u>Plaintiff's Exhibits:</u>
Exhibit 18:  Medical Records from Mercy Gilbert Medical Center

**b.**    <u>Defendant's Exhibits</u>:

**100.**  MCSO 0452-456 Madrigal IR22015850_Redacted

24

**101.** MCSO 0457-459 Bradshaw Supplement IR22015850_Redacted

**102.** MCSO 0462-464 Hunter Supplement IR22015850_Redacted

**103.** MCSO 0460-461,153 Gilchrist Supplement IR22015850
_Redacted

**104.** MCSO 0465-466 Prather Supplement IR22015850

**105.** MCSO 0020-28 CAD Event History IR 22-015850 _Redacted

**106.** MCSO 1608 Dispatch Call 22-015850 14_24_05 LAKES

**107.** MCSO 1609 Dispatch Call 22-015850 14_28_02 INFO

**108.** MCSO 1610 Dispatch Call 22-015850 14_28_04

**109.** MCSO 1611 Dispatch Call 22-015850 14_29_42

**110.** MCSO 1612 Dispatch Call 22-015850 14_32_13

**111.** MCSO 1613 Dispatch Call 22-015850 14_36_02

**112.** MCSO 1614 Dispatch Call 22-015850 14_51_04

**113.** MCSO 1615 Dispatch Call 22-015850 14_53_52

**114.** MCSO 1616 Dispatch Call 22-015850 14_55_32

**115.** MCSO 1617 Dispatch Call 22-015850 14_58_00

**116.** MCSO 1618 Dispatch Call 22-015850 15_04_23

**117.** MCSO 1619 Dispatch Call 22-015850 15_05_07

**118.** MCSO 1620 Dispatch Call 22-015850 15_14_46

**119.** MCSO 1621 Dispatch Call 22-015850 15_25_26

**120.** MCSO 1622 Dispatch Call 22-015850 15_57_09

**121.** MCSO 1623 Dispatch Call 22-015850 16_52_08

**122.** MCSO 0039-43 PCR_Corona_Redacted

**123.** MCSO 1494 PSB Video Interview Venable 11.09.22

**124.** MCSO 0044 IR 22-015850 Bowling BWC

**125.** MCSO 0045 IR 22-015850 Gilchrist BWC_Redacted

**126.** MCSO 0047 IR 22-015850 Prather BWC_Redacted

**127.** MCSO 0048 IR 22-015850 Clark BWC

**128.** MCSO 0049 IR 22-015850 Madrigal BWC_Redacted

**129.** MCSO 0050 IR 22-015850 Hanson BWC

**130.** MCSO 0051 IR 22-015850 Hunter BWC

**131.** MCSO 0046 IR 22-015850 Bradshaw BWC 1425

**132.** MCSO 0052 IR 22-015850 Bradshaw BWC 1502_Redacted

**133.** MCSO 0079 IA2022-0324 Complaint on Sheriff's VM log_Redacted

**134.** MCSO 0082 Corona Initial Complaint to Walters (Audio)

**135.** MCSO 0077-78 MCSO External Complaint Report IA2022-0324_Redacted

**136.** MCSO 0469-471 Notice of Claim 111522_Redacted

**137.** MCSO 1417-1420 Updated Notice of Claim 031323

**138.** MCSO 0069 PSB Interview with Corona 072722_Redacted (Audio)

**139.** MCSO 0067 Phone Contact with Corona Attorney 091323_Redacted

**140.** MCSO 0057 Final Disposition Letter to Corona re: IA2022-0324_Redacted

**141.** MCSO 0236-450 IA2022-0324_Redacted

**142.** MCSO 0154-173 CP-1 Use of Force Policy (3/31/22)

**143.** MCSO 0174-194 CP-2 Code of Conduct Policy (4/27/22)

**144.** MCSO 0195-229 GH-2 Internal Investigation Policy (05/28/21)

**145.** MCSO 1446-1461 GJ-35 Body-Worn Cameras (2/02/22)

**146.** MCSO 1554-1566 Just Cause BWC GJ-35 Training – Hunter

26

1    **147.** MCSO 1465-1466 SRTR Memo

2    **148.** MCSO 1567-1575 UOF2022-0462 – Hunter_Redacted

3    **149.** MCSO 1631 PSB Video Interview Hunter 09.08.22

4    **150.** MCSO 1534 PSB Video Interview Hunter 11.20.23

5    **151.** MCSO 0060 IA2022-0324 Notice of Findings - Hunter

6    **152.** MCSO 0109-110 IA2022-0324 Hunter - Findings

7    **153.** MCSO 1533, 1535-1553 Lt. Hunter Documents

8    **154.** MCSO 1504 PSB Video Interview Clark 11.07.22

9    **155.** MCSO 0140-142, 1505-1507 Officer Clark Documents

10   **156.** MCSO 1514 PSB Video Interview Geesey 10.28.22

11   **157.** MCSO 0091-0093, 1515-1516 Officer Geesey Documents

12   **158.** MCSO 1523 PSB Video Interview Gonzalez 01.16.23

13   **159.** MCSO 0064 IA2022-0324 Notice of Findings –

14   Gonzalez_Redacted

15   **160.** MCSO 0102-103 Gonzalez – Findings

16   **161.** MCSO 1524-1525 Reserve Deputy Gonzalez Documents

17   **162.** MCSO 1578 PSB Video Interview Jinks 11.28.22

18   **163.** MCSO 0061 IA2022-0324 Notice of Findings - Jinks

19   **164.** MCSO 0111-112 Jinks - Findings

20   **165.** MCSO 1582-1584 Officer Jinks Documents

21   **166.** MCSO 1684 PSB Video Interview Madrigal 11.15.22

22   **167.** MCSO 0113-114, 0123, 0143, 1685-1688, 1693 Officer Madrigal

23   Documents

24   **168.** MCSO 1592 PSB Video Interview Prather_Redacted

25   **169.** MCSO 0062 IA2022-0324 Notice of Findings –

26   Prather_Redacted

1       **170.** MCSO 0124-125 Prather - Findings

2       **171.** MCSO 1593-1595 Officer Prather Documents

3       **172.** MCSO 1674 PSB Video Interview Hanson 11.07.22

4       **173.** MCSO 0059 IA2022-0324 Notice of Findings –

5             Hanson_Redacted

6       **174.** MCSO 0108 Hanson - Findings

7       **175.** MCSO 1675-1677 Officer Hanson Documents

8       **176.** MCSO 1605 PSB Video Interview Ranck 03.09.23

9       **177.** MCSO 0130-0132, 1604, 1606-1607 Officer Ranck Documents

10      **178.** MCSO 1650 PSB Video Interview Ramirez 10.6.23_Redacted

11      **179.** MCSO 1485 PSB Video Interview Sahlberg 10.11.2022

12      **180.** MCSO 0153 Chaplain Sahlberg Witness Statement_Redacted

13      **181.** MCSO 1632-1644 Jayne Ramirez Documents

14      **182.** Photos Before and After Incident

15      **183.** Plaintiff's Initial Disclosure with Kasulka Statement_Redacted

16      **184.** Plaintiff's Responses to 2nd Interrogatories

17    **2.**    As to the following exhibits, the parties have reached the following

18       stipulations:

19       a.  Plaintiff's Exhibits:

20           i. The parties agree that Plaintiff's Exhibit 17 (Valley Bone and Joint

21             records) may be admitted into evidence so long as the records have

22             been redacted for personally identifiable information.

23       b.    Defendant's Exhibits:

24           i. The parties agree that Defendant's Exhibit 141 (MCSO 0236-450

25             IA2022-0324_Redacted) may be admitted into evidence.

26           ii. The parties agree that Defendant's Exhibits 124-132 (BWC

videos) may be admitted into evidence.

iii. The parties agree that Defendant's Exhibits 100-104 (IR IR22015850) may be admitted into evidence.

iv. The parties agree that none of the documents will require a custodian of records to authenticate or to establish that they are business records pursuant to Rule of Evidence 803(6) or public records pursuant to Rule of Evidence 803(8).

**3.** As to the following exhibits, the party ("objection party") against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection (legal objection stated in few words – **no narrative**) stated below:

**a.** Plaintiff's Exhibits:

Exhibit 1: Plaintiff needs to lay foundation for Exhibit 1, which is a photo of Pablo Gonzalez. Otherwise, it was not disclosed pursuant to Fed. R. Civ. P. 26.1.

Exhibit 2: Plaintiff needs to lay foundation for Exhibit 2, which is a photo of Defendant. Defendant objects to the relevance of the photo.

Exhibit 3: Exhibit 3 is a full transcript of Alexandria Kasulka's deposition in violation of this Court's Order. Doc. 92 at 10.

Exhibit 4: Exhibit 4 is medical bills for Source of Health. When Plaintiff originally provided his exhibits on October 17, 2025, he did not list any corresponding medical records as an exhibit to explain how the bills are related to his June 18, 2022, knee injury. On November 10, 2025, he added those records. Hearsay, foundation, and relevance. See also MIL No. 6 & 7.

Exhibit 5: Exhibit 5 is an insurance claim form without medical records attached explaining how it is related to the June 18, 2022, knee injury. It provides limited information. Hearsay, foundation, Rule 403, and relevance.

Exhibit 6: Exhibit 6 is a medical bill for Chandler Radiology but has not listed any

corresponding medical records to explain how the bills are related to his June 18, 2022, knee injury. Hearsay, foundation, Rule 403, and relevance. See also MIL No.5

Exhibit 7:  Exhibit 7 are Plaintiff's monthly invoices for a personal trainer at Resurrected Physiques with no explanation as to purpose, foundation, Rule 403, or relevance with his June 18, 2022, knee injury. Also, hearsay. See also MIL No. 6

Exhibits 8 & 20: Exhibits 8 and 20 are the billing records (8) and medical records (20) from Hangar Clinic. The records prior to the visit on July 12, 2022 predate the date of injury and are irrelevant to the left knee injury. Rule 403. Hearsay, foundation, Rule 403, and relevance. See also MIL No. 5.

Exhibit 12 & 22 are records (22) and billing (12) from Canyon Sky ENT. The treatment is unrelated to his left knee injury and irrelevant to the litigation.  Hearsay, foundation, Rule 403, and relevance. See MIL #6 & 7.

Exhibit 13 & 23 are records (23) and billing (13) from Valley Sleep Physicians. The treatment is unrelated to his left injury and irrelevant to the litigation.  Hearsay, foundation, Rule 403, and relevance. See MIL #6.

Exhibit 14 is Plaintiff's tax forms for 2019-2023 without the supporting documentation for proof of income such as W-2s or 1099s despite claiming multiple employers. Fed. R. Civ. P. 26.1, 33, 34, relevance, foundation, Rule 403, and hearsay.

Exhibit 15 are some documents from 2022 – 2023 from the VA, Plaintiff's primary employer.

Page 1 and 13 is an alleged lost wage statement from the VA that was exchanged for the first time on November 10, 2025 and not during the October 17, 2025 exchange of exhibits. It also fails to list the alleged total lost wages. Hearsay, foundation, relevance, Rule 403, and MIL #7.

Page 2  is not relevant because it relates to an injury that occurred on August 10, 2023, and there is no foundation for its relation to the June 18, 2022,

injury. Hearsay, foundation, relevance, and Rule 403.

Page 3 is a single paystub from 2022. It is not proof of lost wages. Foundation, relevance, Rule 403, and hearsay. Fed. R. Civ. P. 33, 34.

Pages 4-7 is a 2022 FMLA document. It is not relevant with no evidence of loss of income. Hearsay, relevance, foundation, and Rule 403.

Page 8 is a single paystub from 2023. It lacks relevance because there is no evidence of lost wages. Fed. R. Civ. P. 26.1, 33, 34, relevance, foundation, Rule 403, and hearsay.

Pages 9-12 is a 2023 FMLA document. This relates to an injury on August 10, 2023. Fed. R. Civ. P. 26.1, 33, 34, relevance, foundation, Rule 403, and hearsay.

Exhibit 16 consists of five photos. There is no date stamp on any of the photographs. Lack of foundation.

Exhibit 19 are records from Banner Imaging. Defendant objects to all the records except those dated 7/7/22, 8/11/22, 9/19/22, and 1/10/23. The imaging on other dates are for issues unrelated to Plaintiff's left knee injury. Foundation, relevance, Rule 403, and hearsay. See MIL #5.

Exhibit 24 is Bradshaw's third body-worn camera recording for June 18, 2022. It does not show any actions that are relevant to how Plaintiff's left knee was injured. Relevance and Rule 403.

**b.**    Defendant's Exhibits:

**c.**    If the objecting party seeks to use an exhibit listed by an offering party, an asterisk shall be placed next to that exhibit number, and the offering party shall set forth any objections that party reserves if the objecting party offers that exhibit.

**d.**    The offering party shall bring all marked exhibits to trial the morning of trial; the offering party may not remove any exhibits after the parties' meeting. In other

words, all exhibits marked at the meeting shall be brought, in their complete form, to trial.

**4.** Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

**G.    DEPOSITIONS TO BE OFFERED**

The parties shall list the depositions that may be used at trial. The portions to be read at trial shall be identified by page and line number. Counter-designations (if any) to proposed deposition testimony shall also be listed in this section. Additionally, the party offering the deposition shall provide the Court with a copy of the offered deposition testimony. The offering party shall highlight, in color, the portions of the deposition to be offered. If multiple parties are offering the same deposition, only one copy of such deposition shall be provided. Such copy shall contain each party's highlighting (each party should use a different color).[1]

Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed, absent good cause.[2]

**A. Plaintiffs**

| Plaintiffs' Witnesses | Designation | Defendant's Objection |
|---|---|---|
| Alexandria Kasulka (date) deposition | 4:8 – 35:9 | 4:10-14 (Relevance)<br><br>4:19-22 (Relevance)<br><br>7:22-24 (Relevance; Privacy)<br><br>9:5-12 (Relevance)<br><br>16:5-9, from "I was kind of" - - to pretty much or whatever." (Hearsay).<br><br>17:4-11 (Hearsay) |

---

[1] The marked depositions are due the morning of trial with the Judge's copy of the exhibits.

[2] The deposition requirements do not apply to depositions that will be used solely for impeachment purposes

| | | | 19:12 – 20:3 (Hearsay) |
|---|---|---|---|
| | | | 20:9-12, from "And then the cop came and checked on him" to "something like that: (Speculation; Assumes Facts; Foundation) |
| | | | 20:13-17 (Hearsay) |
| | | | 20:24 – 21:2 (Speculation; Argumentative; Assumes Facts; Foundation) |
| | | | 24:18-21 (Relevance) |
| | | | 25:14-16, from "And then after that happens" to What are you doing?" (Hearsay) |
| | | | 25:20-21, from "By that time" to "you just hit my friend." (Hearsay) |
| | | | 28:11-17 (Relevance) |
| | | | 29:4-15 (Relevance) |
| | | | 32:24 – 35:10 (Relevance) |

**B. Defendant**

| Defendant's Witnesses | Designation | Plaintiff's Objection |
|---|---|---|
| David Gosnel May 31, 2024, deposition | 4:6-25 5:1-3; 13-25 6:1-25 7:1-25 8:1-14 | |

| | | 9:4-25<br>10:1-4<br>14:4-14 | |
|---|---|---|---|

**H.    MOTIONS IN LIMINE (JURY TRIAL)**

Motions in limine shall be filed as separate pleadings and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**I.    LIST OF PENDING MOTIONS**

None. Motions in Limine are due on or before November 7, 2025.

**J.    [PARTIES'] ESTIMATED LENGTH OF TRIAL**

3 hours – Jury selection

2 hour – Opening statements

20 hours – Plaintiff's case

23 hours – Defendant's case

3 hours – Closing arguments

51 hours – Total.

**K.    TRIAL DATE**

Tuesday, January 27, 2026.

**L.    JURY DEMAND**

The parties stipulated a jury trial. (Doc. 93.) The Court issued its Order scheduling a jury trial. (Doc. 94.)

**M.    JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT**

The separately filed joint Proposed Jury Instructions, joint Proposed Voir Dire Questions, and Separate Forms of Verdict are incorporated by reference into this joint

1   Proposed Final Pretrial Order.

2   **N.    CERTIFICATIONS**

3          The undersigned counsel for each of the parties in this action do hereby certify and

4   acknowledge the following:

5          **1.**     All discovery has been completed.

6          **2.**     The identity of each witness has been disclosed to opposing counsel.

7          **3.**     Each exhibit listed herein: (1) is in existence; (2) is numbered; and (3) has

8   been disclosed and shown to opposing counsel.

9          **4.**     The parties have complied **in all respects** with the mandates of the Court's

10  Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

11         **5.**     The parties have made all of the disclosures required by the Federal Rules

12  of Civil Procedure. (Unless otherwise previously ordered to the contrary.)

13         **6.**     The parties acknowledge that once this **joint** Proposed Final Pretrial Order

14  has been signed and lodged by the parties, no amendments to this Order can be made

15  without leave of Court.

16

17  **APPROVED AS TO FORM AND CONTENT:**

18

19                                              RACHEL H. MITCHELL
                                                MARICOPA COUNTY ATTORNEY
20

21  BY: */s/ Paul Gattone (with permission)*        BY:    */s/ Charles E. Trullinger*
        PAUL GATTONE                                       KIM CHAMBERLAIN
22      Attorney for Plaintiff(s)                          CHARLES E. TRULLINGER
                                                           EVELYN D. DUEÑAS
23                                                         Deputy County Attorneys
                                                           *Attorneys for Matt Hunter*
24

25

26

Based on the foregoing,

**IT IS ORDERED** that this Proposed Final Pretrial Order jointly submitted by the parties is hereby **APPROVED** and **ADOPTED** as the official Pretrial Order of this Court.

DATED this 17th day of December, 2025.

James A. Teilborg
Senior United States District Judge